ELIZABETH FERN, Appellant, *v.* ABRAM J. OSTERHOUT and Others, Respondents.

*Purchase-money mortgage — dower is favored — it is not properly determined in an action of foreclosure — allegations which are insufficient to bring it in question — acquiescence in a sale.*

The lien of a purchase-money mortgage, as such, does not extend farther than to the specific property whose purchase price is secured by it.

The right of dower is highly favored in law, and can be cut off only by an unequivocal act of the dowress, or by proceedings in which the right of dower is clearly and legally brought in question.

An action of foreclosure is not a proper proceeding for the determination as to the existence of a right of dower.

An allegation in a complaint in foreclosure, following the description of the mortgaged premises, "this mortgage is given to secure a portion of the purchase money of the above-described premises," when considered in connection with the further allegation that the defendants have interests which have accrued subsequently to the lien of the mortgage, is not sufficiently specific to bring in question the right of dower of a widow of the mortgagor, who, although made a party defendant, did not sign the mortgage, nor appear nor litigate her rights in the action.

How far a party will be estopped, by her silence at the time of a foreclosure sale, to assert rights in the property sold, considered.

APPEAL by the plaintiff, Elizabeth Fern, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Otsego on the 31st day of May, 1895, upon the report of a referee dismissing the plaintiff's complaint.

In the year 1852, one James Fern died intestate in the town of Milford, Otsego county, New York, seized and possessed of the real estate described in this action, and leaving him surviving George Fern, James Fern and Andrew Fern, his only children and heirs at law.

In September, 1875, Andrew Fern and his wife conveyed their interest in the premises described in the complaint to George Fern.

In November, 1875, George Fern was married to Elizabeth Fern, the plaintiff in this action.

In March, 1881, James Fern conveyed his interest in the premises described in the complaint to George Fern, and on the same day George Fern executed and delivered to James Fern a bond and mortgage, conditioned for the payment of $1,291.35, intended as security for the payment of the purchase price of James Fern's interest in said premises, and being described as being a purchase-money mortgage.

In April, 1885, George Fern borrowed of the defendant Welthy S. Marble the sum of $1,300, for the purpose of paying and satisfying the bond and mortgage given to James Fern, and paid said bond and mortgage with such money, whereupon said bond and mortgage were satisfied and discharged.

At the time of borrowing said sum of $1,300 from Marble, the said George Fern executed and delivered to said Marble a bond and mortgage, conditioned for the payment of the sum of $1,300 and interest, which mortgage covered and described the premises

described in the complaint, and contained the following recital: "This mortgage is given to secure a portion of the purchase money of the above-described premises."

At the time of borrowing said money from Marble, and of the execution and delivery of the bond and mortgage as security for the payment thereof, no part of the consideration of the mortgage given by George Fern to James Fern, to secure the purchase price of James Fern's interest in the premises described in the complaint, had been paid. The plaintiff was not a party to the mortgage given to James Fern, nor to the mortgage given to Marble.

George Fern died intestate at the town of Milford, in the month of March, 1889, leaving him surviving the plaintiff, his widow, and his brothers, James and Andrew Fern, his only heirs at law and next of kin. Letters of administration upon the estate of George Fern were issued to Elizabeth Fern, the plaintiff, in the month of April, 1889. She duly qualified and entered upon the discharge of her duties as such administratrix.

In December, 1889, default having been made in the payment of the money secured to be paid by the bond and mortgage given by George Fern to the defendant Marble, an action was commenced in the Supreme Court by the said Marble to foreclose such mortgage. Elizabeth Fern, as administratrix of George Fern, deceased, and Elizabeth Fern, individually, and others, were the defendants in such action.

The plaintiff, neither as administratrix, nor individually, made any answer to the complaint or appeared in such action, and such proceedings were had therein that a judgment of foreclosure was obtained on the 14th of March, 1890. The premises described in the complaint were sold at public auction, and were purchased by the defendant Abram J. Osterhout for the sum of $1,704. A referee's deed was thereupon given to him, and he entered into possession of the premises, and was so in possession at the time of the commencement of this action.

The plaintiff was present at the time of the sale of the premises under the judgment of foreclosure, and at such sale the referee announced that the sale was made under a purchase-money mortgage. The plaintiff remained silent and made no claim at that time that she had any right of dower in or lien upon the premises.

Thereafter, and in April, 1893, the plaintiff commenced this action for the recovery of her dower rights in the premises described in the complaint.

The defendants Marble and Osterhout served separate answers; the action was referred to a referee, and, after a trial had, he directed that a judgment should be entered dismissing the complaint. Upon the trial the plaintiff filed with the referee her written consent to accept a gross sum in satisfaction and discharge of her right of dower in the premises described in the complaint.

*R. M. Townsend,* for the appellant.

*Gibbs & Wilbur* and *W. J. Palmer,* for the respondents.

HERRICK, J.:

The theory of the peculiar and superior lien of a purchase-money mortgage is, *first,* that it is equitable that the premises purchased should be the primary security for the payment of its own purchase price; and, *second,* that the deed of conveyance and the mortgage to secure the purchase price are each regarded as part and parcel of the same transaction, and that no interval of time elapses between the giving of the deed and the giving of the mortgage during which any other claim or right can intervene and attach to the property. Therefore, it follows that the lien of a purchase-money mortgage, as such, extends no further than to the specific property whose purchase price is secured by the mortgage.

At the time George Fern purchased from James Fern his interest in the premises in question and gave him a purchase-money mortgage to secure the purchase price, he was already the owner of two-thirds of the farm, and the plaintiff had a right of dower therein, and by giving a mortgage upon the entire farm to secure the purchase price of one-third of it, and describing the mortgage as a purchase-money mortgage, the lien of the mortgage, as a purchase-money mortgage, was not extended to the other two-thirds of the farm, and the dower right of the plaintiff rendered subordinate to the mortgage.

And assuming that George Fern borrowed money of the defendant Marble for the purpose of paying the mortgage to his brother James, and that thereby Marble became equitably subrogated to

the rights of James Fern, and that the mortgage given to him to secure the payment of the money so borrowed took the place of the mortgage to James Fern as a purchase-money mortgage, he could equitably acquire no greater lien or interest than James Fern possessed by virtue of his mortgage, and assuming for the purpose of this appeal that it was equitably a purchase money mortgage, it was a lien as such upon only one-third of the premises in question.

Courts have always been tender of the right of dower, and solicitous to protect it. Coke said "that three things be favored in law — life, liberty and dower." (1 Coke upon Litt. [2d Am. ed.] 14.)

The right of dower can only be cut off or barred by the clear unequivocal act of the dowress herself, or by proceedings where such right of dower is clearly and legally brought in question.

In this action it is claimed that the proceedings in foreclosure, under which the premises were sold, and to which proceedings the plaintiff was made a party, extinguished her right of dower.

It has been held that an action of foreclosure is not a proper proceeding in which to determine the right of dower, and that a judgment in such an action, wherein the widow is made a party, and in the complaint in which no specific allegations are made as to her dower, does not bar her right thereto. (*Lewis* v. *Smith*, 9 N. Y. 502; *Merchants' Bank* v. *Thomson*, 55 id. 7; *Nelson* v. *Brown*, 144 id. 384.)

In the case of *Nelson* v. *Brown* (*supra*) the husband of the plaintiff left a will whereby he devised and bequeathed unto his widow the use, income, profits and rents of all his real estate during her natural life, to be enjoyed, accepted and received by her in lieu of dower. She was made a party defendant in a proceeding to foreclose a mortgage executed by her husband in his lifetime, but in the execution of which mortgage she did not join. The complaint in foreclosure contained a general allegation to the effect that the defendant (the widow) had, or claimed to have, some interest in the mortgaged premises which had accrued subsequently to the lien of the mortgage. She did not appear or answer in the foreclosure proceedings.

The judgment in foreclosure provided that the premises should be sold "subject to the dower therein of the defendant, Jenette

Nelson," following a finding of fact and conclusion of law to that effect. In speaking of the effect of the judgment rendered therein, and the sale had thereupon, the court said : " The proceedings in the foreclosure action were ineffectual to determine the question of the plaintiff's right to dower in the mortgaged lands. * * * When, after her husband's death, the action of foreclosure was brought, though she was made a party defendant, the complaint tendered no issue upon her right to dower. The general allegation to the effect that the defendant had, or claimed to have, some interest in the mortgaged premises, which had accrued subsequently to the lien of the mortgage, could have no reference or relation to her dower right, if it existed ; for it would have been a right paramount to that of the mortgagee. It is not proper to say that the allegation had no meaning as to Mrs. Nelson ; for if she took only a life estate under the will of her husband, that would have been an interest which had accrued subsequently to the lien of the mortgage. If she accepted the provision for a life estate in the testator's real property in lieu of her dower, her interest in the mortgaged premises was subordinate to the mortgagee's. The question of the competency of adjudicating in foreclosure proceedings upon a dower right has been passed upon in the case of *Merchants' Bank* v. *Thomson* (55 N. Y. 7).

" The wife, there, did not join in the mortgage ; but she was made a party defendant in the action to foreclose it, though there was no averment in the complaint relating to her. FOLGER, Ch. J., in the course of his opinion said : ' A foreclosure action is not the proper mode to litigate rights claimed in priority or hostility to the mortgage. A judgment passing upon them is erroneous. A person claiming dower by title paramount to the mortgage cannot be brought into court in such a suit to contest the validity of her dower. The position is the same as if she had not been a party to the foreclosure action.' That opinion was founded upon the inadequacy of the proceeding to determine the question of dower ; not only because of the non-existence of any issue respecting the dower right, but because the wife could not be compelled to come into such a proceeding and there to litigate her rights. It is very evident, as no issue had been tendered nor made as to Mrs. Nelson's dower right, and as the question was not one which was essential or

material to be decided in the foreclosure action, that no valid adjudication thereupon could be made."

In the cases cited, it will be observed that the persons subsequently claiming dower did not appear or answer, and the proceedings being proceedings where it was not necessary for the purposes of the action to determine any question of dower, and being proceedings wherein it was improper to litigate a claim of dower, the dowress· did not waive her rights, as such, by not appearing or answering in the proceedings where those rights were not necessarily or properly to be passed upon.

In this case, however, it is claimed that the complaint in the foreclosure action was sufficient to charge the plaintiff here with knowledge that her right of dower would be barred by the judgment sought. This claim is based upon the fact that in the complaint in the foreclosure action occurs this language : " This mortgage is given to secure a portion of the purchase money of the above-described premises ;" and it is contended that a purchase-money mortgage cuts off the right of dower, or rather that the right of dower does not exist as against a purchase-money mortgage, that these words were sufficient notice to the plaintiff here that it was intended to bar and foreclose her from all claim to dower.

It seems to me that, in pleading matter which is to foreclose and bar parties of any right, or which is relied upon as giving them notice that any right is to be questioned, the language which is intended to give such notice and be effectual to bar such rights, should be clear and unequivocal and well calculated to apprise the party of what is meant or intended.

In this case it is difficult to say whether the language in question is intended as an allegation of fact that the mortgage being foreclosed is a purchase-money mortgage. The complaint sets forth the execution and delivery of a bond and mortgage, and in describing the mortgage it alleges that the mortgagor granted, bargained and sold to the plaintiff " the following described premises with the appurtenances thereto, that is to say : " then follows a description of the real estate, which is a copy of the description of the real estate given in the mortgage. Following that, occur the words I have above quoted : " This mortgage is given to secure a portion of the purchase money of the above-described premises." Then occurs the

following : " The lands now in possession of the Albany & Susque-
hanna Railroad Company taken from the premises herein described
are excepted from the obligations of this indenture " Then the
complaint proceeds with allegations as to the conditions of the
mortgage

Possibly under our liberal rules as to the construction of plead-
ings this might be regarded as a sufficient allegation that the mort-
gage was a purchase-money mortgage, although from the place in
the complaint at which it appears, practically a part of the descrip-
tion of the mortgaged property, and being merely a recital con-
tained in the mortgage, it is well calculated to mislead.

But all parts of the complaint must be read together. The last
allegation of the complaint is, upon information and belief, that
" Said Elizabeth Fern, James Fern, Andrew Fern and Mrs. Andrew
Fern, his wife, the defendants, have or claim to have some interest
in or lien upon the said mortgaged premises, or some part thereof,
which interest or lien, if any, has accrued subsequently to the lien
of said mortgage "

This is not apt language to describe the interest of the plaintiff in
the premises or to give her notice that her right of dower is to be
brought in question or cut off , it can hardly be said that her interest
is subsequent to the lien of the mortgage , the most that can be said,
treating the mortgage as a purchase-money mortgage, is, that her
interest is subordinate to the lien of the mortgage. The last allega-
tion, that her interest was acquired subsequent, destroyed whatever
effect might otherwise be given to the words, " This mortgage is
given to secure a portion of the purchase money of the above-de-
scribed premises." Coupling the two allegations together, I do not
think that the complaint was sufficient to apprise her that her right
of dower would be brought in question in the foreclosure proceedings.
She was not clearly notified that her right of dower was to be ques-
tioned. Again, it may be said that while this was a purchase-money
mortgage, it was only a purchase-money mortgage to the extent of
one-third of the premises in question, and the plaintiff might prop-
erly rely upon that fact, and that the plaintiff in the foreclosure
proceedings would not take any greater judgment than the lien of
the mortgage justly entitled him to, and which would not affect her
interest in the remaining two-thirds of the property.

In a proceeding wherein it is not proper to determine the right of dower, and wherein the complaint does not in more specific terms set forth that such right of dower is to be brought in question, and wherein the dowress does not appear and litigate her rights, and thereby consent to the regularity of the proceedings, I do not think she can be foreclosed of her rights.

As to the proceedings upon the sale where it was announced by the referee that the sale was under a mortgage for the purchase money, I do not think that the appellant's failure to announce at that time that she claimed any right of dower or lien upon the premises, is sufficient to estop her from asserting her claim now. There is no evidence that she heard the announcement of the referee, and if she had, it was not notice to her that her right of dower was to be cut off by such sale.

If it is to be held that she is presumed to know the law, and, therefore, must have known that in law a purchase-money mortgage was superior to her right of dower, and that a sale under it would bar her dower, then she must be also held to have known that as a matter of law this mortgage was a purchase-money mortgage only as to one-third of the premises, and that the sale would not in any event bar her dower in the remaining two-thirds.

The judgment should, therefore, be reversed, the referee discharged and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed, referee discharged and a new trial granted, costs to abide the event.